STATE *vs.* ARTHUR L. WICKENHOEFER.

*Criminal Law—Indictment—Charging Illegal rate of Interest in Violation of Chapter* 149, *Vol.* 23, *Laws of Delaware—Demurrer—Constitution of United States; Construction of—Equal Protection of the Laws—Due Process of Law—Constitution of Delaware; Construction of—Laws of the Land—Violation of the act by Agent of Company;—Violation by Company.*

1. The act entitled "An Act Licensing Brokers or other persons to make small loans and charge interest in excess of the present rate," being *Chapter* 149, *Vol.* 23, *Laws of Delaware*, is constitutional and valid.

2. The averment in an indictment of the violation of the provisions of a statute by the defendant, acting at the time as the agent of the company, is a sufficient averment, within the meaning of the act, of the violation of the law by the company he represents.

(*June* 16, 1906.)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Robert H. Richards*, Attorney-General, and *Daniel O. Hastings,* Deputy-Attorney General, for the State.

*Philip L. Garrett, David J. Reinhardt* and *Herbert H. Ward* for the defendant.

Court of General Sessions, New Castle County, May Term, 1906.

INDICTMENT for charging illegal rate of interest, in violation of *Chap*. 149, *Vol*. 23, *Laws of Delaware* (No. 47, February Term, 1906). Demurrer.

PENNEWILL, J.:—In this case the defendant has been indicted for the violation of an Act of the General Assembly of this State which imposes certain penalties upon all persons, firms and corporations, except national and state banks and trust companies organized under the laws of this State, who shall make loans in sums not exceeding the sum of one hundred dollars at a rate of interest greater than six per cent. without having first procured from the Clerk of the Peace of New Castle County a certificate, and doing certain other things as provided by the Act.

This Act, being *Chapter* 149, *Vol*. 23, *Laws of Delaware*, 256, and entitled "An Act licensing Brokers or other persons to make small loans and charge interest in excess of the present legal rate," is in the following words:

"Whereas, there is within this State one or more persons or corporations engaged in the business of advancing loans of money and accepting as security chattel mortgages where the security is household goods or furniture, and in some cases accepting orders upon the firm or corporation where the borrower is employed, and

"Whereas, the charges imposed by said persons or corporations are in excess of the legal rate of interest in this State, affected by imaginary services rendered in the form of searches, attorneys fees, etc., therefore,

"Be it enacted by the Senate and House of Representatives of the State of Delaware in General Assembly met:

"Section 1. That after the approval of this Act the Clerk of the Peace of New Castle County shall grant certificates of

Registration under his hand and the seal of his office to persons, firms or corporations, authorizing them to exercise the business of loaning money as hereinafter provided. Applicants for such certificates of registration shall upon receiving the same enter into a bond to the State of Delaware in the penal sum of One Thousand Dollars, with warrant for the confessing of judgment thereon, with waiver of all benefit of the exemption laws of any State in which judgment shall be recovered upon said bond, conditioned for the due observance of the provisions of this Act and to pay any fine or fines and costs imposed upon such obligor or obligors for the violation of the provisions of this Act.

"That persons, firms or corporations taking out such certificates of registration shall pay to the Clerk of the Peace for his own use an issuing and registration fee of Two Dollars.

"Section 2. That the Clerk of the Peace of New Castle County shall keep a record of all certificates of registration so granted by him which record shall contain the names and residences of the persons granted such certificate and if such a certificate shall be granted to a company or firm, the names of the individuals composing the same, and if a corporation the names of the President, Secretary and Treasurer of the said Corporation and their respective residences, and the said record shall be competent evidence in any Court where the fact of such registration may be in question.

"Section 3. That every person holding a certificate as aforesaid shall be entitled to make loans on personal property or otherwise not exceeding the sum of One Hundred Dollars and charge as interest in addition to the legal rate of interest an additional sum at the rate of five per centum per annum on the amount loaned, and no further interest, commission or charge shall be made.

"Section 4. Any person, firm, company or corporation making a loan and charging said additional interest or any interest, commission or charge in excess of six per centum, the legal rate of interest on any sum not exceeding One Hundred Dollars as aforesaid, shall give to the borrower a correct copy of any mortgage, bond, note or any instrument of writing by

which said loan is evidenced or secured, and on failure or re-
fusal to furnish on request of the borrower a copy of said mort-
gage, bond, note or other instrument of obligation evidencing or
securing said loan shall be guilty of a misdemeanor, and on
conviction thereof shall for each offense be fined a sum not less
than Twenty nor more than One Hundred Dollars, or imprisoned
for a term not exceeding one month or both in the discretion of
the Court.

"Section 5.   If any person or persons, firm, company or
corporation, not first having taken out a certificate of registra-
tion as aforesaid, shall exact, require or demand, from any per-
son or persons, a rate of interest upon sums of One Hundred
Dollars or under in excess of six per centum per annum, whether
the same is stated to be either interest or for services rendered
or expenses incurred, or if any person or persons, firm, company
or corporation having taken out a certificate of registration as
aforesaid, shall exact, require or demand from any person or
persons, interest upon sums of One Hundred Dollars or under
in excess of the legal rate of interest as now provided by law in
this State together with an additional sum at the rate of five
per centum on the amount of loan per annum as hereinbefore
provided, whether said additional sum be in the form of interest
or for services rendered or expenses incurred, shall be guilty of
a misdemeanor, and on conviction thereof shall be fined a sum
not less than Twenty nor more than One Hundred Dollars for
each offense, or imprisoned for a term not exceeding one month
or both, in the discretion of the Court.

"Section 6.   In case of the violation of any of the provi-
sions of this Act by any firm, company or corporation, any
member of said firms or company, and the President, Secretary
or Treasurer, or any person or persons acting as agent or agents
of the said firms, companies or corporations in the County of
New Castle, may be proceeded against as principals and if found
guilty of violating the provisions of this Act shall be punished
in accordance with the provisions thereof.

"Section 7.   It is expressly provided that nothing in this
Act contained shall be construed to modify or repeal the usury

laws of this State, or to authorize the loaning of money in sums of more than One Hundred Dollars by any person or persons, firm, company or corporation, at a greater rate of interest than that of six per centum per annum, but the said laws shall be and remain in full force and virtue and the penalties provided for the violation of the provisions of this Act, shall be in addition to the penalties provided by the said usury law.

"Section 8. This Act shall not apply to any national or State Bank or to any Trust Company organized under the laws of this State.

"Section 9. That all Laws or parts of Laws inconsistent herewith are hereby repealed and made null and void. .

"Approved, March 29, A. D., 1905."

The indictment against the defendant is as follows:

"February Term, 1906.

New Castle County, ss.

"THE GRAND INQUEST FOR THE STATE OF DELAWARE, and the body of New Castle County, on their oath and affirmation respectively, do present, That Arthur L. Wickenhoefer, late of Wilmington Hundred, in the County aforesaid, on the thirty-first day of October in the year of our Lord, one thousand nine hundred and five with force and arms at Wilmington Hundred, in the county aforesaid, did exact, require, and demand from one George W. Skaggs, a rate of interest upon the sum of twenty-five dollars, in excess of six per centum per annum, to wit did exact, require, and demand, the payment of twelve dollars and twenty cents for the use of the said sum of twenty-five dollars for the period of eight months, he, the said Arthur L. Wickenhoefer being then and there acting as agent of Wilmington Loan Company, being a company doing business in the county and state aforesaid, and it, the said Wilmington Loan Company not having then and there a certificate of registration from the Clerk of the Peace of New Castle County aforesaid, authorizing it, the said Wilmington Loan Company, to exercise the business of loaning money as provided in *Chapter* 149, *Vol.* 23, *Laws of Delaware*; and it, the said Wilmington

Loan Company not then and there being a National or State Bank or Trust Company within the meaning of *Section* 8, *Chapter* 149, *Vol.* 23, *Laws of Delaware.*

"Against the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the State.

"ROBERT H. RICHARDS, *Attorney-General.*
"DANIEL O. HASTINGS, *Dep'y Att'y-Gen'l.*

To this indictment the defendant has demurred, and it is upon such demurrer that the case is now before this Court.

The ten causes of demurrer filed by the defendant are in the following language:

"1.   That *Chapter* 149, *Vol.* 23, *Laws of Delaware*, entitled 'An Act Licensing Brokers or other persons to make small loans and charge interest in excess of the present legal rate,' approved March 29, A. D. 1905, being the Act under which the indictment in said cause is framed and found, is, under the provisions of *Section* 1, *Article* 14, *of the Amendments to the Constitution of ths United States*, unconstitutional and void.

"2.   That said statute, being the Act under which the indictment in the said above cause is framed and found, is, under the provisions of *Section* 1, *Article* 14, *of the Amendments to the Constitution of the United States*, providing that no State shall deny to any person within its jurisdiction the equal protection of the laws, unconstitutional and void, inasmuch as said statute treats of and confers upon persons, firms, companies and corporations doing business in the County of New Castle certain privileges which are general and not local in their nature, but by the terms of said act limits the exercise of said privileges to persons residing within the County of New Castle in said State of Delaware.

"3.   That said statute is, under the constitutional provisions aforesaid, unconstitutional and void, inasmuch as it treats of and imposes criminal penalties for acts which are general and not local in their nature and which may be done, performed or committed by persons, firms, companies or corporations in any

part of the State of Delaware, but which acts are by the terms of said statute made misdemeanors and punishable by the imposition of criminal penalties only when done, performed or committed by persons, firms, companies or corporations in the County of New Castle in said State of Delaware.

"4.   That said statute, under the constitutional provisions aforesaid, is unconstitutional and void, inasmuch as said statute treats of and confers certain rights and privileges upon all persons, firms, companies and corporations in said State, except national and State banks and trust companies organized under the laws of this State, provided such persons, firms, companies or corporations procure certificates of registration, as provided in said act, of which rights and privileges said statute expressly deprives any national or state bank or any trust company organized under the laws of this State, and which rights and privileges said banks and trust companies are, by the provisions of said statute, prohibited from exercising.

"5.   That said statute is, under said constitutional provisions, unconstitutional and void, inasmuch as it treats of and imposes upon all persons, firms, companies and corporations in said State, excepting any national or state bank or any trust company organized under the laws of this State, criminal penalties for acts made misdemeanors by said statute, and by its terms does not make such acts misdemeanors when done or performed by said banks or trust companies, and wholly excepts said banks and trust companies upon the commission or performance by them of said prohibited acts from the penalties therefor provided by said act.

"6.   That said statute is, under the provisions of said constitutional provisions, unconstitutional and void, inasmuch as it attempts to confer upon all persons in the State of Delaware whose business it is, or a part of whose business it is, to lend money, as a class, with the exception of national and state banks and trust companies organized under the laws of this State, certain rights and privileges, which said rights and privileges said statute expressly forbids to be exercised by said banks and trust companies.

"7.   That said statute is, under said constitutional provisions, unconstitutional and void, in that it attempts to impose upon all persons, firms, companies and corporations within the State of Delaware whose business it is, or a part of whose business it is, to lend money, as a class, excepting national and state banks, and trust companies organized under the laws of this State, certain criminal penalties for acts connected with said business of money lending, from which penalties for which acts it expressly saves and excepts said national or state banks and trust companies.

"8.   That said statute is, under the provisions of *Section 1, Article 14, of the Amendments to theon Cstitution of the United States,* unconstitutional and void, in that thereby this State is attempting to deprive persons of liberty and property, without due process of law.

"9.   That said statute is, under the provisions of *Section 7 of Article 1 of the Constitution of the State of Delaware,* unconstitutional and void, in that thereby persons are deprived of liberty and property contrary to the law of the land.

"10.   That said indictment doth not disclose or aver that the said Wilmington Loan Company, for whom the said Arthur L. Wickenhoefer is averred to have acted as agent in the premises, was guilty of the violation of any provision of said *Chapter 149, Volume 23, Laws of Delaware,* for violation of which the said Arthur L. Wickenhoefer is charged in the said indictment.

"And that the said indictment is, in other respects, uncertain, informal and insufficient, etc.

ARTHUR L. WICKENHOEFER."

(The usual certificate, signed by counsel, was attached to the above demurrer.)

Eight of the causes of demurrer charge that the act under which the indictment was framed is unconstitutional and void because of the provisions of the Fourteenth Amendment to the Constitution of the United States which read as follows: "Nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Seven of the said eight causes of demurrer are based upon that part of said amendment which prevents the state from denying to any person within its jurisdiction the equal protection of the laws; and the other one is based upon that part of the amendment which prevents the state from depriving any person of his property without due process of law.

Of the remaining two causes of demurrer, one charges that the act is in violation of that part of the Constitution of this State which provides that no person shall be deprived of his liberty or property unless by the law of the land; and the other attacks the indictment upon other than constitutional grounds.

For convenience and clearness we will consider and determine in their order the five following questions, which we think will fully cover all the causes of demurrer that are based on the said constitutional amendment.

1.   Does the act in question apply to New Castle County only?

2.   If it does, is the act for that reason unconstitutional?

3.   Is the act unconstitutional because it discriminates in favor of those persons in New Castle County who make loans in sums not exceeding $100 and against those who make loans in sums exceeding $100?

4.   Is the act unconstitutional because of Section 8, which provides that the act shall not apply to any national or state bank, or to any trust company organized under the laws of this State?

5.   Is the act unconstitutional because of that part of Section 5 which prevents the lender from exacting, requiring or demanding from the borrower interest in excess of the legal rate of six per cent., together with an additional sum at the rate of five per cent., whether said additional sum be in the form of interest or for services rendered or expenses incurred?

Before proceeding to consider each of these points specifically, we will state the following propositions which we think will not be denied:

The manifest purpose of the act under consideration was

to regulate a business which the Legislature believed had become in New Castle County at least, injurious to the public welfare.

The Legislature were the judges of the existence of such a condition, and acting upon the belief that it did exist, had the power to enact such legislation as would be necessary to suppress or regulate the business provided it did not make any arbitrary or unreasonable classification of the persons affected.

The statute in question was passed by the Legislature in the exercise of its police power and as to its general purpose it was a valid exercise of such power. That is to say, the Legislature could, under its police power, enact such laws as were necessary to regulate a business which it believed to be inimical to the public interest.

Those parts of the 14th Amendment to the Constitution of the United States which relate to "due process of law" and "the equal protection of the laws," are subject to the rightful exercise of the police power of the State, and were not designed to restrict such power.

Statutes which are passed for the purpose of preventing usury and which penalize its commission, are generally recognized by the Courts as a valid exercise of the police power.

The evil practice or business which the law before us was designed to suppress, was to all intents and purposes usury, and usury in its worst form; it being a business which was believed to be particularly oppressive to those people who borrowed money in small amounts, and were made the victims of extortionate rates of interest.

It is obvious that the purpose of the Legislature, in the passage of the act, was to suppress this particular species of usury in the territory in which it was believed to prevail, by subjecting guilty persons to the penalties provided in the act.

*Brannon vs. the Fourteenth Amendment,* 233 and 235; *Kreibolm vs. Yancy,* 55 *S. W.* 260; *Munn vs. Ill.,* 94 *U. S.* 153; *U. S. vs. Cruikshank,* 92 *U. S.* 542; *In re Kemmler,* 136 *U. S.* 436.

Keeping in mind these facts which cannot be denied, and principles of law which will not be controverted, we will now consider the first question above propounded, viz.:

Does the act in question apply to New Castle County only?

This question raises one of the most vital and crucial points involved in the case. The arguments of counsel on both sides have been remarkably able and interesting, and we have given to their printed briefs as well as their oral arguments the most careful and thorough consideration of which we were capable in the time at our disposal.

It is hardly necessary for us to state that every statute is presumed to be constitutional, and that Courts should not declare one to be unconstitutional unless it is clear that it is so. If there is a doubt in the mind of the Court the expressed will of the Legislature should be sustained. Courts should be diligent to discover some ground upon which they can uphold the validity of the statute, and if upon a careful examination of the entire act such ground sufficiently appears, the law must be sustained. The party who wishes a Court to pronounce a law unconstitutional takes upon himself the burden of proving, beyond all doubt, that it is so.

Guided by these well-settled principles and rules of law, which require the citation of no authority to support them, can we conclude, clearly and beyond all doubt, that it was the intention of the Legislature that the act in question should apply to the entire State? Is there nothing in the statute from which it sufficiently appears that it was designed to be operative in New Castle County only? As indicative of such design is it not a fact of some insignificance that the certificates of registration which authorized persons, firms and corporations to engage in the business of loaning money in pursuance of the act could be issued only by the Clerk of the Peace of New Castle County? The registration fee must be paid in every case to such Clerk of the Peace and the same officer must keep a record of every certificate of registration granted. This Court must take judicial notice of the fact that the Clerk of the Peace is an administrative officer of the county for which he is appointed, and that there is a similar officer in each of the other counties of the State clothed with the same general duties and powers. It is also a well known fact that a Clerk of the Peace in this State has no

duty, and there is attached to his office no power, that extends beyond the limits of his county. If, therefore, the act was intended to be coextensive with the State in its operation, it is impossible to conceive of any reason why the power to issue the certificates of registration should not have been given to the Clerk of the Peace of each county. Why should the Legislature compel persons residing in Sussex County to apply to an officer in New Castle County, a hundred miles away, for such certificates when there was a similar officer in Sussex County? Licenses, permits and certificates authorizing the doing of business in this State, and issuable by a Clerk of the Peace, have always been issued by the Clerk of the Peace of the county in which the business was to be done. Such has been the policy of the law during the history of the State, and it is very difficult to conceive that the Legislature, in the enactment of this statute intended to depart from the procedure, and reverse a policy which had been uniform for more than a century.

But it seems to us there is another reason for believing it must have been the legislative intent that the act was to apply to New Castle County only, and it is found in Section 6. That Section provides that, "In case of the violation of any of the provisions of the act by any firm, company or corporation, any member of said firm, or company, and the President, Secretary or Treasurer, or any person or persons acting as agent, or agents of said firms, companies or corporations in the County of New Castle may be proceeded against as principals and if found guilty of violating the provisions of this act, shall be punished in accordance with the provisions thereof."

If the act was to apply to the entire State it surely is not possible to imagine any reason why Section 6 should apply only to the County of New Castle. Why should the members of such firms and companies in New Castle County only be punished for a violation of the provisions of an act which applied to the entire State? The statute must be so construed as to make it harmonious and consistent in all its parts if possible. To hold that the act as a whole was to be operative throughout the State, and Section 6 only in New Castle County, would make it

not only absurd but clearly unconstitutional. Such a construc-
tion must be avoided, if it can be, under the well-settled rules
of law. We think it can be avoided by holding that the entire
act affects New Castle County only, and we believe such a
construction is a fair and reasonable one.

The words "within this State" contained in the preamble of
the act are not of any special significance in determining this
question. They are not inconsistent with the intent that the
act should apply exclusively to New Castle County. The terri-
tory covered, and the persons affected, were in either case "with-
in this State," and although there might be persons in other
parts of the State "engaged in the business," the Legislature
might very well have seen fit to restrict the operation of the
statute to the locality in which the business was mainly carried
on, to wit, the County of New Castle.

Having determined that the act under consideration is con-
fined to New Castle County, it is unnecessary to notice that
part of the argument of defendant's counsel which is based on
the assumption that it was operative throughout the State.

Is the act unconstitutional because it is restricted to New
Castle County, the said county being one of the political subdi-
visions of the State?

The contention of the defendant upon this point seems to
be that the statute relates to, and treats of, a subject matter
that is general in its nature, as extensive as the State, and not
confined to a single county. Such being the case, it is contended
that the Legislature could not grant to the citizens of New Castle
County privileges in respect to the loaning of money which are
not granted to those of Kent and Sussex Counties; or impose
upon the citizens of the latter counties penalties that are not
imposed on those of the former. This, it is insisted, would be
class legislation, and a denial, within the meaning of the Con-
stitution, to certain citizens of the State, of the equal protection
of the laws.

But no principle of law appears to be better established than
this: That the Legislature may determine whether a law which it
enacts shall be coextensive with the State, or be operative only

within a certain political subdivision thereof. And this rule is subject only to the limitation that the law which operates in a political subdivision of the State must be uniform in its operation on all the citizens of such subdivision, or on the class of citizens to be affected by it; and must not, with respect to its operation, make arbitrary and unreasonable classifications of the persons within the sphere of its operation. Judge Cooley in his work on Constitutional Limitations (7th Ed.) 554, says: "Laws public in their objects, may, unless express constitutional provision forbids, be either general or local in their application. * * * The circumstances of a particular locality, or the prevailing sentiment in that section of the State, may require, or make acceptable, different police regulations from those demanded in another. * * * These discriminations are made constantly, and the fact that the laws are of local or special operation only is not supposed to render them obnoxious in principle." And he further adds: "of the propriety and policy of such laws the Legislature must judge."

*Mo. vs. Lewis*, 101 *U. S.* 22; *Guild vs. Bank*, 57 *N. W.* 504; *Davis vs. State*, 68 *Ala.* 64; *State vs. Moore*, 104 *N. C.* 720; *State vs. Berlin*, 21 *S. C.* 296.

As a matter of fact the Legislature of this State at every session enacts laws, public in their objects, to be operative in some political subdivision of the State, relating to subject matters as general in their nature as that of usury, and their constitutionality has never, for that reason, been questioned. Some years ago the laws pertaining to the exemption of personal property from execution and attachment process were substantially different in every county, but their validity was never doubted so far as we know. And, as a matter of fact, the "Act to exempt wages from attachment process," which applied to New Castle County alone, was held by the Court to be constitutional.

*P. W. & B. R. R. Co. vs. Sharpe*, 2 *Pennewill* 407.

Until very recently the law which limits the lien of judgments to a period of ten years applied to New Castle County

alone, and was declared by the Supreme Court of this State to be constitutional.

*Devalinger vs. Maxwell*, 4 *Pennewill* 186.

We think it clear that the act in question is not unconstitutional because of its application to New Castle County alone.

Is the act unconstitutional because it discriminates in favor of those persons in New Castle County, who make loans in sums not exceeding one hundred dollars, and against those who make loans in sums exceeding one hundred dollars? We understand it to be one of the contentions of the defendant, that the statute confers privileges on the former class that are denied to the latter, and imposes penalties on the latter class from which the former is exempt.

The Legislature believing that certain things were done, and certain methods employed, that were oppressive to a large number of people of small means, and injurious to the public welfare, passed the act in question for the purpose of remedying an existing evil.. It unquestionably had the right to determine where, and by whom, the injurious business was engaged in, and confine the operation of the law to such place and such persons, provided the act affected all of such persons alike and did not make any arbitrary and unreasonable classification of them. The effect of the statute, of course, was to give to those persons who made small loans certain privileges which were not given to those who made larger ones, but if it operated alike, and without discrimination, upon all of the persons in the county who made small loans we fail to see wherein it made any unlawful classification within the meaning of the Constitution. The purpose of the law was to regulate a business and not to create a class.

The only authority cited by the defendant which even apparently conflicts with the view we have here taken is that of *Ex parte Solincke (Cal.)* 82 *Pac.* 956, and we will refer more fully to that case in connection with the next question to be considered. But we wish to say here that the classification, if it can be so called, in our act, of those who loan in sums not exceeding $100 and those who loan in larger sums, comes within the rule

recognized in the Solincke case, and in many others, as the correct rule, for it is founded upon a distinction which bears some relation to, or furnishes cause for, the particular legislation embraced in the act.

In the case of *Ohio vs. Dollison*, 194 *U. S.* 443, in which the Court upheld the constitutionality of a local option law which excepted from its operation druggists, manufacturers and persons who give away liquors in their private dwellings, etc., Mr. Justice McKenna in delivering the opinion, said: "If between the plaintiff's occupation and the excepted occupation there is such difference as to justify a difference of legislation, necessarily he cannot complain."

It may be instructive in this connection to cite a few of the more recent cases in the Supreme Court of the United States which have a direct bearing on the point we are considering. From these cases it appears that the Supreme Court is extremely careful and cautious about avoiding a State law, particularly when it appears to have been passed in the exercise of the police power of the State, and for the purpose of remedying an evil, of the existence and extent of which, the state legislators are the sole judges. A large discretion is necessarily vested in the Legislature to determine what the public interests require, and what measures are necessary for the protection of such interests. In delivering the opinion of the Court in the case of *Barbier vs. Connolly*, 113 *U. S.* 27, Mr. Justice Field says: "But neither the amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power." * * *

"Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if, within the sphere of its operation, it affects alike all persons *similarly situated*, is not within the amendment." The same Justice, in the case of *U. P. Ry. Co. vs. Mackey*, 127 *U. S.* 205, says: "The greater part of all legislation is special, either in the parties sought to be bound by it or in the extent of its application. * * * Such legislation is not obnoxious to the last clause of the

Fourteenth Amendment, if all persons subject to it are treated alike under similar circumstances and conditions in respect both to the privileges conferred and the liability imposed."

In the case of *Otis and Gasman vs Parker*, 187 *U. S.* 606, it was contended that a provision of the Constitution of California, declaring all contracts for the sale of stock of a corporation on margin to be void, was in conflict with the Fourteenth Amendment, although such provision did not make void contracts for the purchase of other things than stock, on margin. Mr. Justice Holmes in delivering the opinion says: "With regard to the objection that this provision strikes at only some, not all, of the objects of possible speculation, it is enough to say that probably in California the evil sought to be stopped was confined in the main to stock in corporations. * * * If stopping the purchase and sale of stocks on margins, would stop the gambling which it was desired to prevent, it was proper for the people of California to go no further in what they forbade. The circumstances disclose the reasonable ground for the classification."

In the case of *M. K. & T. Ry. Co. vs. May*, 194 *U. S.* 267, the same Justice, in delivering the opinion of the Court says: "There is no dispute about general principles. The question is whether this case lies on one side or the other of a line which has to be marked out between cases differing only in degree. With regard to the manner in which such a question should be approached, it is obvious that the Legislature is the only judge of the policy of a proposed discrimination. * * * When a State Legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the courts under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. * * * Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."

In these two broad and logical opinions, delivered by Jus-

tice Holmes, we think are to be found the general principles that must determine the question we are now considering, and largely govern the present case.  Applying the rule he laid down in the first case to our own, we say, if stopping the lending of money in amounts not exceeding one hundred dollars, except in the manner provided by the act, would stop the excessive charges and suppress the evil it was designed to prevent, it was proper for the Legislature to go no further in what they forbade. The circumstances disclose the reasonable ground for the classification.   In its general principles, if not in its facts, it would seem difficult to find a case more analogous to the one before us.  And applying the opinion delivered by Justice Holmes in the second case above cited to the present  one, we  say there is no dispute about general principles. The Legislature is the only judge of the policy of a proposed discrimination, and when it declared in the present act that the operation of the law should be confined to persons who made loans in sums not exceeding one hundred dollars it cannot be said by this Court there was no fair reason for the law that would not also require its extension to others whom it leaves untouched.  The evil was caused by the lenders of small sums of money, and if the Legislature believed it could be removed, or prevented by confining the law to such lenders, they had a right to do so, and it was proper to go no further.

Having determined that the act in question is confined to New Castle County; that the Legislature had a right to so confine it; and having determined also that they had a right to confine it to those persons in the county who make loans in sums not exceeding one hundred dollars, we will now inquire whether the act is rendered unconstitutional by Section 8, which excepts from its operation national and state banks and trust companies organized under the laws of this State.

This we think is another vital and crucial point in the case, and we were not without difficulty in reaching a satisfactory conclusion.  But after carefully examining the numerous cases cited on both sides, and considering the general principles enunciated or recognized by the Supreme Court of the United States

in various decisions, we are clearly of the opinion that the said act does not, by reason of Section 8, contravene the provisions of the said Fourteenth Amendment.

Much that we have said upon the next preceding point, and the authorities cited in connection therewith, are equally applicable to the question we are now about to consider; and it is entirely unnecessary to repeat here what we have said above or again refer specifically to the same authorities. It is very earnestly contended by the defendant, and apparently with much confidence, that the exception of national and state banks and trust companies from the operation of the act is an arbitrary and unreasonable classification, and a denial of the equal protection of the laws.

Is such a classification of the persons or companies who are to be exempt from the operation of the statute arbitrary and unreasonable under the conditions which the Legislature believed to exist? Is it not possible for this Court to say there was a fair reason for the exception? Does not the classification rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification was proposed? This, according to all the authorities, is the test, and by it the present question must be determined.

See the opinion of Mr. Justice Brewer in *Gulf & Pac. Co. vs. Ellis*, 165 *U. S.* 150.

It may be well at this point to consider the leading authority cited by the defendant, and upon which he seems to confidently rely. We refer to the case of *Connolly vs. Union Sewer Pipe Co.*, 184 *U. S.* 540.

The Illinois statute which was involved in that case provides that "Any purchaser of any article or commodity from any person, firm, corporation or association of persons, or of any two or more of them transacting business contrary to any provision of the preceding sections of this act shall not be liable for the price or payment of such article or commodity," etc. The act goes on to define a "trust;" forbids trusts from doing business in the State; provides for their punishment if they violated the law, and provides also that any contract or agree-

ment in violation of the act should be void and uninforceable. Section 9 of the act is as follows: "The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser."

It is impossible to conceive of any reason why the Legislature of Illinois should have excepted from the operation of the statute dealers in agricultural products and live stock. As the Court very truly said, combinations of such persons were just as hurtful to the public interest as combinations of persons engaged in any other business. "It cannot be said," using the language of the Court, "that the exception was of slight consequence, * * * for it cannot be disputed that agricultural products and live stock in Illinois constitute a very large part of the wealth and property of the State." And, it may be remarked, that combinations of the excepted interests were just as likely to happen in that State, and perhaps more so, than of any other interests. Such a classification was undoubtedly arbitrary and unreasonable.

In the Solincke case (*supra*), which counsel for defendant insist is strikingly similar to our own, and which was decided by the Supreme Court of California, the statute prohibited persons who loaned money in sums not exceeding $300 on chattel mortgages of certain kinds of property from charging more than a specified rate of interest, but did not prohibit those who loaned in the same sums on chattel mortgages on other kinds of property from exacting any rate of interest or other charge which they could obtain from the borrower. It was upon this arbitrary distinction that the Court, approving of and following the reasoning in the Sewer Pipe Company case, held that the statute was unconstitutional; although the Court did go further and say: "there is no substantial reason why those who lend * * * in sums exceeding $300 upon any kind of security, should be allowed to exact any rate of interest," etc. The Solincke case is more like the Sewer Pipe Company case than our own, and the classification was held to be unconstitutional for the same reason in each case. The exceptions in the Illinois and California statutes are not at all analogous to that contained in the Dela-

ware act.  In the passage of the latter act it is manifest that the Legislature were seeking to regulate a business that had grown to be injurious to the public welfare.  They recognized the fact that there was a demand in New Castle County for small loans for which household goods and furniture and orders on employers, were usually given as security.  Because of the smallness of the loans, and the character of the security, such loans could not be obtained at the legal rate of interest, and it was necessary, therefore, to permit the lender to charge a rate which would be in excess of the established rate.  In order, however, that such lenders might enjoy this privilege, which was denied to others, they were required to obtain from the Clerk of the Peace certificates of registration, and do certain other things as provided in the act.  To effectuate the intent and purpose of the Legislature, certain penalties were imposed upon all persons who should make loans at a rate of interest above six per cent., who had not complied with the provisions of the act, except national and state banks and trust companies.  Was such a classification arbitrary and unreasonable?  Can it be said, as in the Illinois case that banks and trust companies were as likely to engage in the forbidden business, and be as hurtful to the public interests as those to whom the act did apply?  We think not.  Manifestly the Legislature believed that banks and trust companies organized under the laws of the State and referred to in Section 8, had not engaged, and would not be likely to engage in the business which they were seeking to regulate, and in the evil they designed to suppress; and therefore should not be unnecessarily hampered and embarrassed in the conduct of their legitimate business by the requirements imposed upon those who engage in the business contemplated by the act.

No doubt the Legislature meant by "Trust Companies" those then generally known in this State as such; and which not only exercised some of the powers and functions of banks, but were commonly included in the meaning of the term "banking institutions."

In the case of the *St. Louis Consolidated Coal Company vs. Illinois*, 185 *U. S.* 203, a statute had been passed by the Legis-

lature of Illinois which provided for the appointment of inspec-
tors of mines and the payment of their fees by the owners of
the mines, and limited the application of the law to mines where
more than five men are employed at any one time.

The Court said: "Another question is whether the act (as
amended in 1897) in so far as it discriminates as to penalties
imposed upon some persons engaged in the mining business, and
not upon others, is a proper exercise of the police power.  It is
true that the act of 1897 amended the former law of 1895,by
limiting its application to coal mines 'where more than five
men are employed at any one time.'  This is a species of classi-
fication which the Legislature is at liberty to adopt, provided it
be not wholly arbitrary or unreasonable, as it was in *Cotting vs.
Kansas City Stock Yards Company*, 183 *U. S.* 79, in which an
act defining what should constitute public stock yards and regu-
lating all charges connected therewith was held to be unconsti-
tutional, because it applied only to one particular company,
and not to other companies or corporations engaged in a like
business in Kansas, and thereby denied to that company the
equal protection of the laws.  In the case under consideration
there is no  attempt arbitrarily to select one mine for inspec-
tion, but only to assume that mines, which are worked upon so
small a scale as to require only five operatives, would not be
likely to need the careful inspection provided for the larger
mines, where the workings were carried on upon a larger scale
or at a greater depth from the surface, and where a much larger
force would be necessary for their successful operation.  It is
quite evident that a mine which is operated by only five men
could scarcely have passed the experimental stage, or that pre-
cautions necessary in the operation of coal mines of ordinary
magnitude would be required in such cases.  There was clearly
reasonable foundation for a discrimination here."

And adopting the same reasoning in the case before us, it
may be said there was no attempt on the part of the Legislature
to arbitrarily except banks and trust companies from the law's
operation; but only to assume that they would not be likely to
engage in the forbidden business, and that precautions neces-

sary respecting those whom the law affected would not be required as to them.

The character and standing of the excepted parties, the nature and conduct of their business, and existing laws which were peculiarly applicable to them, furnished a fair and sufficient reason for the classification contained in Section 8. It should be remembered, in this connection, that the defendant in the indictment demurred to was not one of the class excepted from the operation of the act, being neither a bank or a trust company, and should not therefore be heard to complain that he was, by reason of said exception contained in Section 8, denied the equal protection of the laws in that he was denied a privilege which was not denied to all others of his class.

*Clark vs. Kansas City*, 176 *U. S.* 113.

We come now to consider whether the said act is unconstitutional because of that part of Section 5 which prevents the lender from exacting, requiring or demanding from the borrower interest in excess of the legal rate of six per cent., together with an additional sum at the rate of five per cent., *whether said additional sum be in the form of interest or for services rendered or expenses incurred.*

This provision of the statute is covered by the fifth cause of demurrer, and it is contended by the defendant, is in violation of that part of said Fourteenth Amendment which prevents the State from depriving any person of liberty or property without due process of law. There is no controversy about the correctness of the general principles of law to which the defendant has referred in connection with this question. The authorities he cites we do not need to question. But in this case the question is not—"what is the liberty of the citizen" or "what is his property." Undoubtedly a denial of his right to make contracts and have them executed, generally speaking, would deprive him of his liberty, or property, within the meaning of the said Amendment. And it is unquestionably true that "under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded."

But the question we are to determine is, whether the Legislature had the power to interfere with the right of contract to the extent they did by Section 5 of the Act, if in their judgment it was necessary in order to suppress the evil they believed to exist. It is manifest that the Legislature believed that excessive and unlawful rates were exacted under the guise of "services rendered" and "expenses incurred;" and they undoubtedly considered that, in order to abate the evil, it was essential that the means of effecting the evil should be taken away. They accordingly provided that the lender should not charge more than five per cent. in addition to the six; and intended thereby that such additional five per cent. should cover all extra charges, including those for services rendered and expenses incurred.

We are clearly of the opinion that the Legislature having the power to abate an evil which they believed was injurious to the public welfare, had the right to do whatever was necessary to make effectual that power. And if they determined, as they evidently did, that to accomplish the purpose of the act it was necessary to enact the provisions of Section 5, they had a right to do so, and were not thereby depriving any citizen of his liberty or property within the meaning of said amendment.

The ninth cause of demurrer is based upon that part of the Constitution of this State which provides that no person shall be deprived of * * * liberty or property unless * * * by the law of the land. But we have fully covered that point in what we have said in the discussion of those causes of demurrer which are based upon the Fourteenth Amendment to the Federal Constitution.

The tenth cause of demurrer sets up the objection that the indictment does not disclose or aver that the said Wilmington Loan Company, for whom the said defendant is averred to have acted as agent in the premises, was guilty of the violation of any provision of said *Chapter* 149, *Volume* 23, *Laws of Delaware,* for violation of which the said defendant is charged in the said indictment.

In respect to this contention we think it is sufficient to say that the only way in which corporations can violate a penal

statute is by and through the acts or misconduct of its officers or agents. And in the present case, if it shall be shown that the defendant, being an agent and representative of the company mentioned in the indictment, violated the act upon which the indictment was framed, it will be evidence of the violation of the law by the company; the proof of the one fact will necessarily establish the other. We think, therefore, that the averment in the indictment of the violation of the provisions of the act by the defendant, acting at the time as the agent of said company, was a sufficient averment, within the meaning of the act, of the violation of the law by the company he represented.

GRUBB, J.:—I will say to counsel on both sides that Judge Pennewill and I have reached the same conclusion after a careful consideration of the arguments of counsel and as thorough an examination of the authorities cited as the time at our disposal would admit of.

I therefore concur in the opinon of the Court as read by Judge Pennewill.

LORE, C. J.:—(dissenting). I have very carefully considered the law and the authorities produced in this case in the hope that I might be able to agree with my brethren on the bench. But after a most careful consideration, the provisions of the law are so confused, obscure and conflicting, that I have been unable to put any reasonable or constitutional construction upon it. In my judgment the law to be enforced, especially where it imposes a penalty, ought to be clear enough for the people upon whom it is to be enforced to understand it reasonably and for the Court to be able to enforce it without, what appears to my judgment to be, judicial legislation,—adding to the law judicially enough to make it either reasonable or constitutional.

The demurrer, however, is overruled by a majority of the Court.