(89 South. 837)

## BULLARD INV. CO. v. FORD. (6 Div. 828.)

(Court of Appeals of Alabama. May 10, 1921.
Rehearing Denied June 7, 1921.)

**I. Pawnbrokers and money lenders ⬡⟿6—Recovery back under usurious contract where permitted.**

Under the general statutes of the state, a usurious contract is voidable only, and only unenforceable as to amount of usury, and money paid under such contract cannot be recovered, in the absence of an express promise to pay, but, under Acts 1900–1901, p. 2685, a local usury law for Jefferson, Etowah, and Walker counties, excessive payments may be recovered back.

**2. Pawnbrokers and money lenders ⬡⟿2—Statute held not unconstitutional.**

Acts 1900–1901, p. 2685, a local usury law for Jefferson, Etowah, and Walker counties, is not unconstitutional as against one who loaned $5 and charged $1.80 per month for the use thereof.

**3. Pawnbrokers and money lenders ⬡⟿6—Contract held usurious.**

A transaction whereby plaintiff signed note for $5, stating on its face that plaintiff was to pay interest at the rate of 8 per cent. per annum, but in fact was required to orally agree to pay $1.80 per month for the use of the money, and did pay such amount, was usurious under Acts 1900–1901, p. 2685, the local usury law for Jefferson, Etowah, and Walker counties.

Appeal from Circuit Court, Jefferson County; Walter Brower, Special Judge.

Action by Ed Ford against the Bullard Investment Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Special count A is as follows:

Plaintiff claims of defendant $75 damages for this, namely: That on, to wit, November 5, 1917, defendants were engaged in the business of money brokers or money lenders in Jefferson county, Ala., and taking therefor by bills of sale, mortgages on, or conveyances or liens of, any kind of personal property or personal effects or other personal security, and that on said date, namely, on, to wit, November 5, 1917, plaintiff entered into a certain contract in writing with defendants, whereby plaintiff borrowed of defendants the sum of $5. Plaintiff avers that he gave to defendants his note, payable to defendants for $5, payable 30 days from the date thereof, said note bearing on its face the stipulation that plaintiff was to pay interest thereon at the legal rate of interest in Alabama. Plaintiff further avers that, notwithstanding said stipulation on said note whereby he agreed to pay interest thereon at the legal rate of 8 per centum per annum, plaintiff was in fact required by defendants to engage in a verbal contract with reference to said loan and said note to pay the usurious interest rate of $1.80 per month for the use of said $5; and plaintiff avers that he did pay to defendants, their servants, agents, or employees, the sum of $1.80 for the use of said $5 for each and every one of the following months, to wit: November and December, 1917; January, February, March, April, May, June, July, August, September, October, November, and December, 1918; and January, 1919; and up to, to wit, January 11, 1919. That January 11, 1919, plaintiff borrowed of defendants the further sum of $5 and gave his note of hand to defendants on said day and date for the sum of $10, said note bearing on its face the statement that said note was to bear interest at the rate of 8 per cent. per annum; but plaintiff avers that as a matter of fact he was required to enter into a verbal contract with defendants, by and

through their servants, agents, or employees, whose names are to the plaintiff unknown, to the effect that, instead of paying the legal rate of interest on said loan of $10, plaintiff was in fact to pay for the use thereof the sum of, to wit, $3 per month; and plaintiff avers that for the use of said $10 he did pay to the defendants the sum of $3 for each and every one of the following months during 1919, to wit: February, March, April, and May. And plaintiff avers, further, that on, to wit, the 9th day of June, 1919, plaintiff borrowed of defendants the further sum of $5, making a total principal indebtedness of plaintiff to defendants of $15, in evidence of which said indebtedness plaintiff gave to defendants his note of hand for $15 on said day and date, which said note bore on its face the statement that said indebtedness was to bear the legal rate of interest, but plaintiff avers that on said day and date, and before he could secure said loan, he was required by the servants, agents, or employees of defendants, whilst acting as such, and within the line and scope of such said service, agency, or employment, to agree verbally to pay for the use of said $15 the usurious sum of, to wit, $4 per month; and plaintiff avers that as a matter of fact he did so pay said sum of $4 for each and every month thereafter during 1919 as follows: June, July, August, and September. And plaintiff avers that defendants are now demanding of him the sum of, to wit, $19 in payment of said principal sum of $15 which plaintiff borrowed from defendants in the way and manner hereinabove set forth and at the times hereinabove set forth, and $4 for the use of said $15 from, to wit, the 9th day of October, 1919, to, to wit, the 9th day of November, 1919, and as a proximate consequence of said usurious contract plaintiff was put to great expense for attorney's fees in prosecuting this his suit for recovery of said moneys usuriously paid to defendants, and he lost much time from his work in and about his efforts to recover said money so paid; hence this suit.

The demurrers insisted on are as follows:

(10) It is not made to appear that the transactions of the plaintiff and defendants come within the purview of the act of the Legislature of Alabama approved March 9, 1901, regulating the business of money brokers, or of persons who lend money for themselves or others on bills of sale, notes, or mortgages on personal property or other personal security in Jefferson, Morgan, Walker, and Etowah counties.

(11) It appears that the money sought to be recovered by plaintiff was voluntarily paid by him to defendants.

(13) It is not shown wherein or how the contract between plaintiff and defendants on the 15th day of November, 1919, or on January 11, 1919, or on June 9, 1919, failed to comply with the act of Legislature of Alabama approved March 9, 1901, regulating the business of lending money in Jefferson, Morgan, Walker, and Etowah counties.

(18) It affirmatively appears that the transaction by which plaintiff borrowed $5 on, to wit, January 11, 1919, and gave his note of hand to defendants for the sum of $10, was not an action regulated by the act of March, 1901.

(21) It fails to appear or show wherein the note made by the plaintiff at the time he borrowed the $5 on, to wit, November 15, 1917, failed to comply with the act of March 9, 1901.

(22) The act of March 9, 1901, regulating the business of money brokers, or persons who lend money for themselves or others on bills of sale, notes, or mortgages on personal property or other personal security, in Jefferson, Morgan, Walker, and Etowah counties, is unconstitutional, in that it unjustly restricts defendants' exercise of their right of contract.

(23) Said act of March 9, 1901, is unconstitutional in that it only applies to loans which do not exceed $75, and which are not made by persons engaged in the business of banking.

(24) Said act of March 9, 1901, is unconstitutional in that section 3 thereof prohibits a loan of money not exceeding $75, to be made to a person who signs his name by mark in Jefferson county, Ala., by a money broker, unless the lender was in the banking business, or unless the note evidencing the loan is attested by two witnesses who are not of kin to the lender, and who have no interest in said loan, either directly or indirectly, and who are not at the time in the employment of the lender, although the loan is made at a lawful rate of interest.

(25). Said act of March 9, 1901, regulating the business of money brokers, or persons who lend money for themselves or others on bills of sale, notes, or mortgages on personal property or other personal security, in Jefferson, Morgan, Walker, or Etowah counties, is unconstitutional and void, in that it prohibits a loan of less than $75 being made by one engaged in lending his own money, other than in a banking business, to a person who cannot write his name at a legal rate of interest in cases where no bill of sale or mortgage on personal property or other personal security is taken, unless the note given by the borrower is attested by two witnesses who are not of kin to the lender, and who are in no way interested in said loan, either directly or indirectly, and who are not at the time in the employment of the lender.

(26) Said act of March 9, 1901, regulating the business of money brokers, or persons who lend money for themselves or others on bills of sale, notes, or mortgages on personal property or other personal security, in Jefferson, Morgan, Walker, and Etowah counties, is unconstitutional and void, in that it prohibits a loan of less than $75 being made by a money broker, other than in the banking business, at a rate of interest not exceeding 8 per cent. per annum, without complying with the requirements definitely set forth in said act.

(27) The act of the Legislature of Alabama, approved March 9, 1901, entitled "An act to regulate the business of money brokers, and persons who lend money for themselves or others on bill of sale, notes, or mortgages on personal property or other personal security, in, Jefferson, Morgan, Walker, and Etowah counties," is unconstitutional and void, in that it prohibits a money broker, other than one engaged in the banking business, making a loan of money not exceeding $75 at a lawful rate of interest in which no bill of sale, or mortgage on personal property or other personal security, other than the note of the borrower evidencing said loan, is taken without a compliance of the requirements of said act.

(28) Said act of March 9, 1901, is contrary

to the general law of the state of Alabama regulating the rate of interest on loans of money in amounts not exceeding $75.

(29) Said act of March 9, 1901, undertakes to permit a money broker 12 per cent. per annum on loans of money of less than $75 in violation of the general laws of the state of Alabama.

(30) Said act of March 9, 1901, is unreasonable in its terms, obligation, and effect.

(31) Said act of March 9, 1901, regulating the business of money brokers, or persons who lend money for themselves or others on bills of sale, notes, or mortgages on personal property or other personal security, in Jefferson, Morgan, Walker, and Etowah counties, is unconstitutional and void, in that it makes it a criminal offense for any person, other than one engaged in the banking business, to take, or attempt to take, except by legal process, any property sold or mortgaged, or on which he claims a lien, obtained by him as security for a loan which does not exceed $75, and which was made for him through a money broker engaged in business in Jefferson county, Ala., and which said loan was made at a rate of interest not exceeding 8 per cent. per annum, and which was evidenced by a note signed by a mark, unless said signature was attested by two witnesses who were not of kin to the lender, and who were in no way interested in the loan, either directly or indirectly, and who were not at the time in the employment of the lender, and unless the mortgage or lien had been recorded as required by section I of said act.

A. Said act of the Legislature regulating the lending of money in Jefferson and other counties is contrary to section 104 of the Constitution of Alabama, in that it permits a higher rate of interest to be charged than 8 per cent. per annum.

The demurrers were overruled, and the defendant pleaded the general issue and special plea No. 4 as follows:

"That the money herein sought to be recovered of the defendants was voluntarily paid by plaintiff to the defendants."

Plaintiff replied as follows:

"That the contract upon which said payments of usury were made by the plaintiffs were void, and if it be true that said payments were made by plaintiff voluntarily, the defendants ought not in good conscience to be allowed to retain said usurious sum, even if voluntarily paid, because the contract upon which said usury was based was void."

Demurrers raising the same question as those set out to count A were interposed and overruled.

J. L. Drennen, of Birmingham, for appellant.

Money paid as usurious interest cannot be recovered, in the absence of an express promise to repay it. 111 Ala. 468, 20 South. 428. The Act of March, 1901 (Acts 1901, p. 2685), is unconstitutional and void. 40 South. 552; 88 Miss. 209, 40 South. 552, 11 L. R. A. (N. S.) 635, 117 Am. St. Rep. 733; 88 Miss. 567, 41 South. 264; 148 Cal. 262, 82 Pac. 956, 2

L. R. A. (N. S.) 813, 113 Am. St. Rep. 236, 7 Ann. Cas. 475; 12 C. J. 1122; 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186; 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; 141 Ala. 120, 37 South. 332, 67 L. R. A. 286, 109 Am. St. Rep. 23, 3 Ann. Cas. 319; 125 Ala. 581, 28 South. 70; 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; 221 Pa. 529, 70 Atl. 867, 128 Am. St. Rep. 772, 15 Ann. Cas. 641; 194 Ala. 141, 69 South. 626; 75 Ala. 449; 65 Ala. 193; 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; 42 Wash. 237, 84 Pac. 851, 5 L. R. A. (N. S.) 674, 114 Am. St. Rep. 114, 7 Ann. Cas. 577; section 104, Const. 1901.

Arlie Barber, of Birmingham, for appellee.

The contract was void, and plaintiff was entitled to recover. 8 Ala. 84; 90 Neb. 34, 132 N. W. 727, 36 L. R. A. (N. S.) 602; 27 Cyc. 863; 20 Ala. 434; 72 Ala. 150; 85 Miss. 171, 37 South. 1000, 38 South. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275. The act was not unconstitutional. (D. C.) 147 Fed. 545; 201 U. S. 637, 26 Sup. Ct. 554, 50 L. Ed. 896, 5 Ann. Cas. 909.

BRICKEN, P. J. This is an action of assumpsit on the common counts and a special one to recover back money paid by plaintiff to defendant on a void and usurious contract, void as in violation of a local usury law of 1901 (Laws 1900–1901, p. 2685) for Jefferson, Etowah, and Walker counties. The plaintiff demurred to the special count A. The demurrer being overruled, a special plea thereto was filed, to which a replication (treated as special one) was filed, to which a demurrer was interposed and overruled. The trial was had on these issues, and the court gave the affirmative charge for the plaintiff, which resulted in verdict and judgment for plaintiff, and defendant appeals, assigning and insisting upon the adverse rulings to it, above pointed out.

[1] "By the weight of authority, both in this country and in England, an action at common law, in the nature of an action for money had and received, will lie for the recovery back of usurious payments in excess of principal and legal interest. And the omission from a later statute of an express provision of an earlier one for the recovery back of excessive payments does not negative the common-law right. A payment of usurious interest is regarded as made under the constraint of a formal, though illegal, contract, obtained by taking advantage of the necessities of the borrower, and is therefore excepted from the ordinary rule that one voluntarily paying money on an illegal scheme cannot maintain an action to recover such payment." 27 R. C. L. pp. 269, 270. This common-rule, however, was at an early day changed by the general statutes of this state so as to render the contract voidable

only, and only unenforceable as to amount of usury, which prevented the action to recover back money paid under such contracts.

The law in this state on the subject, under the general statute, has been, in substance, thus expressed by the Supreme Court of the state:

"An action to recover back money paid under a usurious contract will not lie in the absence of an express promise to pay." Gross v. Coffey, 111 Ala. 468, 20 South. 428.

If, at common law, the borrower who had paid usurious interest could recover it back in assumpsit, the effect of the statute of 1919 was to change the rule. Carlisle & Groggs v. Gray, 10 Ala. 302; 4 Mayfield Dig. 1055. We are of the opinion that the effect, if not the purpose, of the local statute in question (Acts 1901, p. 2685) was to change the law as to the counties affected thereby, and thus restore the rule at common law as above stated. The act in question declares contracts, such as are shown in this case, to be void, illegal, and not enforceable, and makes the usurer guilty of a crime.

[2, 3] If there ever was justice in the common-law rule—and we think there was—and there ever was a case to which it could and should be applied this appears to us to be that case; and there was no error in any of the rulings of the court then complained of, if the statute in question is valid and constitutional.

We can and will undertake to construe the statute only as it applies to this case, and as to questions which this defendant can raise and has raised on this trial. We know of no constitutional provision—state or federal—which protects or guarantees to the defendant the right or privilege to do what the undisputed evidence shows it to have done in this case. Constitutional provisions which would guarantee to the defendant to do what this record shows the defendant to have done would be little better than legalized robbery. The facts of the case are fairly stated by appellee in his "Statement of the Case," and are as follows:

Ed Ford, a negro, sued in the municipal court of Jefferson county to recover the sum of $40, paid as interest on a loan made to him by appellants which originally was for the sum of $5, but later on, as hereinafter set forth, was increased to $10, and then to $15. The undisputed testimony admitted to by answers of the appellants to appellee's interrogatories, was to the effect that for 15 consecutive months, beginning in November, 1917, appellee paid to appellants the sum of $1.80 per month for the use of this $5, then, increasing the loan by borrowing $5 more on January 11, 1919, appellee paid $3 per month for 5 consecutive months thereafter for the use of this $10, and finally, on the 9th day of June, 1919, appellee added $5 more to the loan, making a total principal of $15 owing by appellee to appellant, upon which he agreed to pay $4 per month for the use thereof, and did so pay said $4 per month for the months of June, July, August, and September, whereupon, appellee's resources becoming exhausted, the evidence showed that he turned in his time and took his discharge from his employer because of threats of garnishment for $19 claimed by appellants, of which $15 was claimed as principal and $4 as interest for the month of October, 1919. The evidence further shows that, immediately after he accepted his discharge, an agent or agents of appellants informed him that if he did not pay the said $19 at once they would seize and sell his household furniture therefor. It was then that he sought an attorney, and these proceedings began by suit to recover money paid as usury.

Counsel for appellant argue at much length that if all the provisions of the statute should be enforced, it would violate some of the fundamental principles of constitutional government, and deprive the citizen of some of his inalienable rights. It is sufficient to say that, if there are such provisions in the statute, as to which we intimate no opinion, the facts of this case do not bring the case within such provisions of the statute. We find no provision of the statute, which applies to the facts in this case, which violates any provision of the state or federal Constitutions.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.