In the Matter of the Application of MEYER RUDACK, Petitioner, for a Peremptory Order of Mandamus against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, and JOHN J. SULLIVAN, as Second Deputy Police Commissioner of said City, in Charge of the Hack Bureau of Said Police Department, Defendants.*

THE LEAGUE OF MUTUAL TAXI OWNERS, INC., MARCO ARONS, RUBEN WISHNEFSKY and RECORD TRANSPORTATION CORPORATION, Intervening Defendants.

Supreme Court, Special Term, New York County, May 10, 1937.

---

* Affd., without opinion, 274 N. Y. 615.

*Joseph G. Fenster,* for the petitioner.

*Paul Windels, Corporation Counsel* [*Charles C. Weinstein* and *Francis J. Bloustein* of counsel), for the defendants.

*Nordlinger, Riegelman & Cooper* [*Harold Riegelman* and *Jacob M. Dinnes* of counsel], for the intervening defendants.

ROSENMAN, J. Petitioner seeks a peremptory order of mandamus requiring the defendants to issue to him a license to operate a taxicab within the city of New York, application for which was made by him on April 22, 1937. The refusal to grant the license is based upon chapter 27-a of the Code of Ordinances of such city, which became effective on March 9, 1937.

The Greater New York Charter (§ 51) provides in part as follows: " Subject to the Constitution and laws of the State, the board of aldermen shall have power to provide for the licensing and otherwise regulating the business of dirt carts, public cartmen, truckmen, hackmen."

Chapter 27-a, passed by the board of aldermen pursuant to this grant of powers, contains the following relevant provisions:

" § 1. It is hereby declared and found that the taxicab industry in the city of New York is vested with a public interest because it is a vital and integral part of the transportation facilities of the City of New York and that its regulation is, therefore, necessary. A careful study and survey of the taxicab industry leads to this inevitable conclusion that to permit this industry to exist without regulation and limitation of the number of taxicabs would be to continue certain present evils and public hazards, among which are: undue and needless traffic congestion; long hours and inadequate income for taxicab drivers; excessive competition because of the number of taxicabs. which results in peril and injury to the

public and higher insurance rates; periodic flooding of the streets with unnecessary taxicabs and needless replacements of adequate equipment; financial irresponsible operation whereby the ownership of taxicabs has been transferred in order to avoid tort obligations; unfair competition, which results in a fraud upon the public by certain owners copying color schemes and emblems which had been previously used and adopted by other taxicab owners. It is further found that taxicabs in the City of New York are now being operated by owners of more than one taxicab and by individuals owning one taxicab, and that the present number of taxicabs licensed and operated in the City of New York is adequate to meet the public need and demand. The present ratio existing between the two types of owners is fair and equitable and should be preserved. It is further found that in limiting the number of taxicabs the public and the taxicab industry must be safeguarded against the ultimate possibility of monopolistic control, with its attendant evils. To limit the number of taxicabs, to avoid this monopolistic control, and to preserve this ratio it is found to be to the general interest that the present number, class and ratio of owners of more than one taxicab and owners of only one taxicab be maintained. * * *

" § 6. Granting of taxicab licenses.

" (a) Present licensees. All licenses of taxicabs which are in operation at the time of the passage of this local law shall be renewed annually as a matter of right upon compliance with the other provisions of this law.

" (b) Licenses of taxicabs for which the owner has no taxicab in operation at the time of the enactment of this ordinance shall be deemed abandoned for non-user, and shall not be renewed.

" (c) All licenses shall pertain not only to the taxicabs which are in operation at the time of the passage of this ordinance but shall also pertain to any replacements of such taxicabs, provided such replacements comply with the provisions of this ordinance and the regulations of the hack bureau, and further provided that, prior to the granting of a license for any such replacement, the owner thereof shall file an application for such replacement on forms to be provided by the hack bureau for such purpose, and shall pay a fee of one dollar ($1) for each such taxicab license so obtained. * * *

" § 11. Additional licenses. The hack bureau shall issue additional licenses only as follows:

" (a) The hack bureau may, upon its own motion, or shall, upon written request by any applicant, conduct public hearings to determine whether the public convenience, welfare and necessity require the operation of additional taxicabs. Notice of such public

hearings shall be published in the City Record once a week for two consecutive weeks, and in not more than two taxicab trade newspapers published in the City of New York. If the hack bureau shall determine that additional taxicabs are necessary it shall certify the number of new licenses to be granted. Not more than once such public hearing shall be held during any calendar year and the hack bureau may refuse to consider any application if it appears that a recent public hearing has adequately considered the question. In making its determination the hack bureau shall consider among other things, the income of the driver, the income of the owner, the effect upon traffic, and the public demand."

The effect of these provisions is to prohibit any additional licenses for taxicabs after the taking effect of the ordinance, until the hack bureau of the police department determines after public hearings, that the public convenience, welfare and necessity require the operation of additional taxicabs. The petitioner urges that the ordinance is unconstitutional in that it deprives the petitioner of his rights and privileges as a citizen, and of the use of his taxicab, without due process of law.

Chapter 27-a was enacted after many extensive hearings relative to taxicab conditions in New York city. A survey and report were made in 1930 by a commission appointed by Mayor Walker for such purpose. In 1934 another study and report were made by another committee appointed by Mayor LaGuardia.

The Legislature also authorized a study by a legislative committee on taxicab operation. One of the recommendations made by such legislative committee (Legis. Doc. 1936, No. 83) was that there be no additional licenses issued in New York city after January 1, 1936, until after proof that public convenience and necessity require them.

Finally, a committee of the board of aldermen held public hearings with reference to conditions in the industry at which were heard various civic groups and representatives of owners, operators, chauffeurs and manufacturers of taxicabs. In general the findings of these various fact finding committees are summarized in article 1 of chapter 27-a, entitled " Legislative Findings," quoted above.

The taxicab industry in New York forms a vital part of the city's transportation system. The commission of 1930 reported an annual taxicab income of $140,000,000, and an annual passenger total of 340,000,000. There are now 13,555 taxicabs in operation, approximately one-half of which are operated by driver owners.

The statute here assailed is a valid exercise of the police power. The evils enumerated in the legislative findings and revealed by the public inquiries are reasonably calculated to interfere with

the safety and health and welfare of the inhabitants of the city. The means adopted to remove or limit the hazard are reasonably designed to the end sought. The restraint and control exercised over the citizen and his occupation are reasonable in the light of the public necessity involved. It is true that, in practice, discrimination will result between those now licensed and those not licensed, but desiring to be. The test of legality is always the public good. The result reached finds reasonable justification in existing conditions. Free and unrestrained competition in the use of the public streets cannot be permitted to work injury to the very public it was intended to aid. In this city, it has kept the industry itself on the brink of ruin and has deprived the public of the required degree of physical safety.

The presence of large numbers of taxicabs engaged in competition with each other in the search for passengers on the streets of a large city crowded with motor vehicle traffic and with millions of pedestrians creates great danger of injury to lives and property. The industry bears so close a relationship to the public interest " that there is superinduced upon " it " the right of public regulation." (*Yellow Taxicab Co.* v. *Gaynor*, 82 Misc. 94, 106; affd., *sub nom. Waldorf-Astoria Hotel Co.* v. *City of New York*, 212 N. Y. 97.) The use of the public streets for hire has never been considered a right but has always been treated as a privilege granted by the city. As a privilege affected with a public interest, it is subject to all reasonable regulation. (*Packard* v. *Banton*, 264 U. S. 140, 143, 145.)

Similar statutes limiting the number of taxicabs have been sustained in other jurisdictions. (*Capitol Taxicab Co.* v. *Cermak*, 60 F. [2d] 608; *City of Wichita* v. *Home Cab Co.*, 141 Kans. 697; 42 P. [2d] 972; *Birmingham Interurban Taxicab Service Corp.* v. *McLendon*, 210 Ala. 525; 98 S. 578; *Fletcher* v. *Bordelon*, [Tex.] 56 S. W. [2d] 313; *Dallas Taxicab Co.* v. *City of Dallas*, [Tex.] 68 id. 359.) In fact, a study made by the American Transit Association in 1934 disclosed that of 93 cities surveyed with a population in excess of 100,000 persons, only 43 did not require a certificate of public convenience and necessity for the operation of taxicabs; and that of the five cities with a population in excess of 1,000,000 — New York, Chicago, Philadelphia, Detroit and Los Angeles — New York alone did not treat the taxicab industry as a public utility.

The delegation of power to the hack bureau is not invalid. Manifestly the board of aldermen could not itself do the work. The ordinance prescribes definitely the conditions under which additional licenses may be issued. In practically all of the aforementioned authorities sustaining the validity of similar statutes there was a similar delegation of power. The determination of

necessity and convenience is an administrative process and not legislative, and may, therefore, with proper restriction be delegated to an administrative body. (*Shearer* v. *Public Service Commission*, 99 Penn. Sup. Ct. 386; *State* v. *LeFebvre*, 174 Minn. 248; 219 N. W. 167; *Lane* v. *Whitaker*, 275 Fed. 476.)

There is nothing to show that the action of the defendants in declining to grant additional licenses was arbitrary, capricious or unreasonable. There is the presumption, on the contrary, that the action is reasonable, just as there is a presumption that the statute itself is constitutional.

Motion is denied.