J. J. KELLEHER, *Appellant*, v. J. C. MINSHULL, *as State Supervisor of Banking, et al., Respondents.*[1]

[1]Reported in 119 P. (2d) 302.

*Dillard & Powell, O. C. Marler,* and *Bertil. E. Johnson,* for appellant.

*The Attorney General* and *Clifford O. Moe, Assistant* (*Max Kaminoff,* of counsel), for respondents.

*B. Franklin Reno, Jr.,* and *Joseph E. Hurley, amici curiae.*

STEINERT, J.—Plaintiff brought this action to test the constitutionality of chapter 208, Laws of 1941, p. 609, known as the small loan act. A demurrer to the complaint was sustained and, plaintiff having elected to stand upon his pleading, the action was dismissed. Plaintiff has appealed.

As stated in appellant's brief, the precise question now to be decided is this: Is the small loan act, chapter 208, Laws of 1941, p. 609, unconstitutional and void, (1) in that it makes an arbitrary classification denying the equal protection of the laws; (2) in that it sanctions an illegal delegation of arbitrary authority, or (3) in that it authorizes unlawful searches and seizures?

The general purpose and scope of the small loan act are set forth in the title thereof, which reads as follows:

"An Act to define, license, and regulate the business of making loans in the amount of five hundred dollars ($500) or less; to permit the licensing of persons engaged in such business; to authorize such licensees to make charges at a greater rate than unlicensed lenders; to prescribe maximum rates of charge which licensees are permitted to make; to regulate assignments of wages or salaries, earned or to be earned, when given as con-

sideration for a payment of five hundred dollars ($500) or less; to exempt certain persons otherwise regulated; to provide for the administration of this act and for the issuance of rules and regulations therefor; to authorize the making of examinations and investigations and the publication of reports thereof; to provide for a review of decisions and findings of the Supervisor under this act; to prescribe penalties; and to repeal all acts and parts of acts in conflict herewith."

The act is patterned upon and adopts the cardinal principles and provisions of the sixth draft of the Uniform Small Loan Law proposed by the department of remedial loans of the Russell Sage Foundation, which in 1907 undertook, and since then has continued, an energetic and comprehensive study of the general small loan business, together with its various ramifications, throughout the United States and elsewhere. A full exposition of the historical development of regulatory small loan laws, culminating in the sixth draft recommended by the foundation, will be found in Hubachek, Annotations on Small Loan Laws (1938), particularly at page 192 *et seq.*, and in an article by the same author appearing in 8 Law and Contemporary Problems 108 (1941), published by Duke University school of law. See, also, an article by Professor Warren L. Shattuck, "Regulation of Small Loans in Washington" (1941), 16 Wash. L. Rev. 117.

At least forty-one states (including Washington), the territory of Hawaii, and the District of Columbia have adopted some form of regulation with respect to small loans, and all but five of those jurisdictions have enacted laws substantially similar to, or in part resembling, one or more of the six drafts of the proposed Uniform Small Loan Law. Furthermore, during the last thirty years there has been extensive litigation bearing upon legislative acts patterned upon one or another of the drafts recommended by the foundation.

Our recently adopted small loan act therefore comes to us with a considerable background of legislative enactment and judicial decision.

Prior litigation in the various states with respect to such legislative enactments has usually taken the form of an attack upon their constitutional validity, and the challenges against them have been rested on many grounds, including the due process clause, the equal protection clause, and the privileges and immunities clause of the United States constitution, and corresponding provisions of the several state constitutions. Whatever may have been the form or ground of attack, however, the basic question in each instance has been whether or not the classification embodied in the challenged statute was reasonable. With the exceptions hereinafter noted and explained, small loan acts similar to the one here involved have been upheld in every court, both Federal and state, wherein the constitutional question has been raised. Because of the importance of the subject, and as a basis from which we shall proceed, we list the cases that have been called to our attention as sustaining the constitutionality of such legislation:

*Federal Courts: In re Home Discount Co.* (N. D. Ala. 1906), 147 Fed. 538; *National Accounting Co. v. Dorman* (E. D. Ky. 1935), 11 F. Supp. 872, affirmed (1935), 295 U. S. 718, 79 L. Ed. 1673, 55 S. Ct. 835.

*Alabama: Bullard Inv. Co. v. Ford* (1921), 18 Ala. App. 167, 89 So. 837; *Ex parte Alabama Brokerage Co.* (1922), 208 Ala. 242, 94 So. 87, denying certiorari to review *Alabama Brokerage Co. v. Boston* (1922), 18 Ala. App. 495, 93 So. 289.

*Arkansas: Jernigan v. Loid Rainwater Co.* (1938), 196 Ark. 251, 117 S. W. (2d) 18.

*California: Eaker v. Bryant* (1914), 24 Cal. App. 87, 140 Pac. 310, review denied (Cal. Sup. Ct. 1914); *In re*

*Halck* (1932), 215 Cal. 500, 11 P. (2d) 389; *Beneficial Loan Society v. Haight* (1932), 215 Cal. 506, 11 P. (2d) 857; *In re Fuller* (1940), 15 Cal. (2d) 425, 102 P. (2d) 321.

*Colorado:* *Cavanaugh v. People* (1916), 61 Colo. 292, 157 Pac. 200; *Warner v. People* (1922), 71 Colo. 559, 208 Pac. 459; *Rice v. Franklin Loan & Finance Co.* (1927), 82 Colo. 163, 258 Pac. 223.

*Delaware:* *State v. Wickenhoefer* (1906), 6 Penne. (Del.) 120, 64 Atl. 273.

*District of Columbia:* *Newman v. United States ex rel. Prender* (1913), 41 App. D. C. 37, writ of error dismissed, *United States ex rel. Prender v. Newman* (1915), 238 U. S. 642, 59 L. Ed. 1502, 35 S. Ct. 602; *Reagan v. District of Columbia* (1914), 41 App. D. C. 409, writ of error to the United States supreme court denied.

*Florida:* *Edwards v. State* (1911), 62 Fla. 40, 56 So. 401; *Beasley v. Cahoon* (1933), 109 Fla. 106, 147 So. 288; *Jannett v. Windham* (1933), 109 Fla. 129, 147 So. 296, 153 So. 784, affirmed, *Jannett v. Hardie* (1933), 290 U. S. 602, 78 L. Ed. 529, 54 S. Ct. 345.

*Georgia:* *King v. State* (1911), 136 Ga. 709, 71 S. E. 1093; *Badger v. State* (1922), 154 Ga. 443, 114 S. E. 635; *Morgan v. Lowry* (1929), 168 Ga. 723, 149 S. E. 37, appeal dismissed, *Morgan v. Georgia* (1930), 281 U. S. 691, 74 L. Ed. 1120, 50 S. Ct. 238; *Morgan v. Shepherd* (1930), 171 Ga. 33, 154 S. E. 780; *Family Finance Co. v. Allman* (1932), 174 Ga. 467, 163 S. E. 143; *Cole v. Franklin Plan Co.* (1933), 176 Ga. 561, 168 S. E. 261.

*Illinois:* *People v. Stokes* (1917), 281 Ill. 159, 118 N. E. 87; *Harbison v. Stamer* (1917), 281 Ill. 450, 118 N. E. 94.

*Indiana:* *Financial Aid Corp. v. Wallace* (1939), 216 Ind. 114, 23 N. E. (2d) 472, 125 A. L. R. 736.

*Iowa: Miller v. Schuster* (1940), 227 Iowa 1005, 289 N. W. 702.

*Kentucky: Ravitz v. Steurele* (1934), 257 Ky. 108, 77 S. W. (2d) 360.

*Louisiana: State v. Hill* (1929), 168 La. 761, 123 So. 317, 69 A. L. R. 574.

*Maryland: Palmore v. Baltimore & Ohio R. Co.* (1928), 156 Md. 4, 142 Atl. 495.

*Massachusetts: Commonwealth v. Morris* (1900), 176 Mass. 19, 56 N. E. 896; *Dewey v. Richardson* (1910), 206 Mass. 430, 92 N. E. 708.

*Missouri: Ex parte Berger* (1906), 193 Mo. 16, 90 S. W. 759, 3 L. R. A. (N. S.) 530, 112 Am. St. 472, 5 Ann. Cas. 383.

*Nebraska: Althaus v. State* (1916), 99 Neb. 465, 156 N. W. 1038.

*New Jersey: Richmond v. Conservative Credit System of New Jersey* (Sup. Ct. 1931), 10 N. J. Misc. 14, 157 Atl. 446, reversed on other grounds (1933), 110 N. J. L. 73, 164 Atl. 563; *Levin v. Morris Plan Corp.* (1934), 12 N. J. Misc. 666, 174 Atl. 237; *State v. Guida* (1938), 119 N. J. L. 464, 196 Atl. 711.

*New York: People v. Blumenthal* (Sup. Ct. 1936), 157 Misc. 943, 284 N. Y. Supp. 873; *Gregg v. Personal Finance Co. of New York* (Sup. Ct. 1937), 164 Misc. 392, 298 N. Y. Supp. 266.

*North Carolina: State v. Davis* (1911), 157 N. C. 648, 73 S. E. 130, 39 L. R. A. (N. S.) 136.

*Ohio: Sanning v. Cincinnati* (1909), 81 Ohio St. 142, 90 N. E. 125, 25 L. R. A. (N. S.) 686; *Wessell v. Timberlake* (1916), 95 Ohio St. 21, 116 N. E. 43, Ann. Cas. 1918B, 402; *Dunn v. State* (1930), 122 Ohio St. 431, 172 N. E. 148, affirming (1930) 36 Ohio App. 170, 173 N. E. 22, appeal dismissed and certiorari denied, *Dunn v. Ohio* (1930), 282 U. S. 801, 75 L. Ed. 721, 51 S. Ct. 84;

*State ex rel. Downing v. Powers* (1932), 125 Ohio St. 108, 180 N. E. 647.

*Oklahoma: Shinn v. Oklahoma City* (1936), 59 Okla. Crim. 433, 61 P. (2d) 1126; *Shinn v. Oklahoma City* (1939), 184 Okla. 236, 87 P. (2d) 136 (both involving city ordinances).

*Oregon: State v. Ware* (1916), 79 Ore. 367, 154 Pac. 905, rehearing denied (1916), 79 Ore. 377, 155 Pac. 364; *Wrenn v. Portland Loan Co.* (1937), 155 Ore. 395, 64 P. (2d) 520.

*Pennsylvania: Commonwealth v. Puder* (1918), 261 Pa. 129, 104 Atl. 505, affirming (1917) 67 Pa. Super. Ct. 11; *Wheeler v. Remedial Loan Co.* (1918), 261 Pa. 139, 104 Atl. 508, affirming (1917) 67 Pa. Super. Ct. 21.

*Tennessee: Koen v. State* (1931), 162 Tenn. 573, 39 S. W. (2d) 283.

*Texas: Brand v. State* (1927), 109 Tex. Crim. App. 96, 3 S. W. (2d) 439; *Hubbard v. State* (1928), 109 Tex. Crim. App. 320, 4 S. W. (2d) 971.

*Virginia: Sweat v. Commonwealth* (1929), 152 Va. 1041, 148 S. E. 774.

*West Virginia: Cash Service Co. v. Ward* (1937), 118 W. Va. 703, 192 S. E. 344.

*Wisconsin: State ex rel. Ornstine v. Cary* (1905), 126 Wis. 135, 105 N. W. 792, 11 L. R. A. (N. S.) 174; *Fahringer v. State* (1912), 148 Wis. 291, 134 N. W. 406.

*Wyoming: State v. Sherman* (1909), 18 Wyo. 169, 105 Pac. 299, 27 L. R. A. (N. S.) 898, Ann. Cas. 1912C, 819.

Exhaustive annotations reviewing the cases involving the constitutionality of small loan legislation will be found in 69 A. L. R. 581 (1930) and 125 A. L. R. 743 (1940).

As suggested above, there are, or rather there have been in former times, some exceptions to the current of judicial authority upholding the constitutional

validity of small loan legislation. In the judicial reports of nine states, including our own, will be found earlier decisions wherein legislative acts having a degree of similarity to the Uniform Small Loan Law have, for one reason or another, been held unconstitutional. Those states are California, Colorado, Louisiana, Missouri, Nebraska, Pennsylvania, Tennessee, Texas, and Washington. We list these states without citing the specific cases therefrom for the reason that in each of those jurisdictions, with the exception of Washington, the earlier decisions have been superseded by the later cases which appear in the extensive list cited above as composing the overwhelming weight of authority. And the case from our own state, *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345, did not in fact deal with a small loan act of the kind involved here, as will appear from a fuller discussion of that case in a subsequent portion of this opinion. We are therefore fully justified in making the statement that, at the present time, there is no jurisdiction in which a small loan law whose structure is substantially the same as that of the Uniform Small Loan Law recommended by the Russell Sage Foundation in its sixth draft is held unconstitutional.

We now take up the specific questions presented by appellant. His first contention, with respect to alleged arbitrary classification, relates to §§ 2, 17, 18, and 19 of the act. Section 2, which corresponds in principle to § 1 of the sixth draft of the proposed Uniform Small Loan Law, provides:

"*No* person shall engage in the business of making secured or unsecured loans of money, credit, goods, or things in action in the amount or of the value of five hundred dollars ($500) or less and charge, contract for, or receive a greater rate of interest, discount or consideration therefor than the lender would be permitted by law to charge if he were not a licensee here-

under except as authorized by this Act and without first obtaining a license from the Supervisor." (Italics ours.)

Section 17 of the act, corresponding in principle to § 18 of the sixth draft, contains a similar prohibition against charging, contracting for, or receiving any greater rate of interest than that which would be permitted by law to one not a licensee under the act, except as provided for therein.

Section 18 of the act, which corresponds in principle to § 19 of the sixth draft, provides that *any* person who shall violate any of certain numbered sections of the act, including §§ 2 and 17, shall be guilty of a gross misdemeanor, and, further, that *any* contract or loan, in the making or collection of which any act constituting a gross misdemeanor shall have been committed, shall be void as to any principal, interest, or charges whatsoever.

In this connection, it may be noted that, while Rem. Rev. Stat., § 7300 [P. C. § 3156], heretofore made it unlawful to charge any greater rate of interest than twelve per cent per annum, the only penalty for violation thereof was that prescribed by Rem. Rev. Stat., § 7304 [P. C. § 3161], namely, the limitation of the lender's recovery to the principal, less certain penalties determined by the interest sought to be charged. In direct contrast, § 18 of the small loan act not only makes the entire loan contract void and unenforcible, but also imposes a criminal penalty upon the offender.

Section 19 of the act under consideration, corresponding in principle to § 20 of the sixth draft above mentioned, provides:

"This Act shall not apply to any person doing business under and as permitted by any law of this state or of the United States relating to banks, savings banks, trust companies, savings and loan or building and loan

associations, industrial loan companies or credit unions, nor to any pawnbroking business lawfully transacted under and as permitted by any law of this state regulating pawnbrokers."

Appellant contends that, although the act assumes to regulate, generally, the business of making loans in the amount of five hundred dollars or less, and in §§ 2 and 17 directs its prohibitions against *all* persons, nevertheless § 19 specifically exempts from the operation of the act eight classes of persons who are engaged in the lending of money in competition with him, and thus makes an arbitrary classification of persons and grants special immunities to those exempted. As a basis for his contention, appellant invokes the fourteenth amendment to the United States constitution, and Art. I, §§ 3 and 12, of the Washington constitution, relating to due process of law, the equal protection of the laws, and the privileges or immunities of citizens.

A legislative act is not violative of any of the constitutional provisions above mentioned, so long as the classification effected is reasonable and has a fair basis, and therefore cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust. *State v. Cannon,* 125 Wash. 515, 217 Pac. 18; *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837; *State ex rel. Scott v. Superior Court,* 173 Wash. 547, 24 P. (2d) 87; *Garretson Co. v. Robinson,* 178 Wash. 601, 35 P. (2d) 504; *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101; *State ex rel. Northern Pac. R. Co. v. Henneford,* 3 Wn. (2d) 48, 99 P. (2d) 616; *Elkins v. Schaaf,* 4 Wn. (2d) 12, 102 P. (2d) 230; *Bauer v. State,* 7 Wn. (2d) 476, 110 P. (2d) 154.

The small loan act, like the Uniform Small Loan Law, is designed to remedy a specific evil which has

existed for many years. The origin, growth, and effect of that evil are fully depicted in the articles referred to above, written by Mr. Hubachek and Professor Shattuck. Indeed, the evil is too well known to require specific description here. Expressions of the courts with reference to it may be found in *In re Home Discount Co.* (N. D. Ala. 1906), 147 Fed. 538; *In re Fuller* (1940), 15 Cal. (2d) 425, 102 P. (2d) 321; *Ravitz v. Steurele* (1934), 257 Ky. 108, 77 S. W. (2d) 360; *Althaus v. State* (1916), 99 Neb. 465, 156 N. W. 1038; *State v. Ware* (1916), 79 Ore. 367, 154 Pac. 905, rehearing denied (1916), 79 Ore. 377, 155 Pac. 364.

In making the classification that it did, the legislature undoubtedly concluded that the persons exempted from the operation of the act were sufficiently regulated and controlled by the terms of specific statutes previously enacted to regulate such persons and the businesses in which they are engaged. A classification based upon that consideration is not arbitrary or capricious, but is well within the discretion of the legislature.

In *Mutual Loan Co. v. Martell* (1911), 222 U. S. 225, 56 L. Ed. 175, 32 S. Ct. 74, there was involved a statute which made invalid, except upon compliance with certain conditions, all assignments of future wages to secure loans of less than two hundred dollars. The statute exempted certain financial institutions from the operation of the act. In answer to the same contention that is now made in this case, the United States supreme court said:

"This contention attacks § 6 of the statute which exempts from its provisions certain banks, banking institutions and loan companies. It is urged that the provision is discriminatory and therefore denies to plaintiff the equal protection of the laws.

"We have declared so often the wide range of discretion which the legislature possesses in classifying

the objects of its legislation that we may be excused from a citation of the cases. We shall only repeat that the classification need not be scientific nor logically appropriate, and if not palpably arbitrary and is uniform within the class, it is within such discretion. The legislation under review was directed at certain evils which had arisen, and the legislature, considering them and from whence they arose, might have thought or discerned that they could not or would not arise from a greater freedom to the institutions mentioned than to individuals. This was the view that the Supreme Judicial Court took, and, we think, rightly took. The court said that the legislature might have decided that the dangers which the statute was intended to prevent would not exist in any considerable degree in loans made by institutions which were under the supervision of bank commissioners, and 'believed rightly that the business done by them would not need regulation in the interest of employes or employers,' citing *State v. Wickenhoefer*, 64 Atl. Rep. 273, a decision by the Supreme Court of Delaware. See *Engel v. O'Malley*, 219 U. S. 128.

"But even if some degree of evil which the statute was intended to prevent could be ascribed to loans made by the exempted institutions, their exception would not make the law unconstitutional. Legislation may recognize degrees of evil without being arbitrary, unreasonable, or in conflict with the equal protection provision of the Fourteenth Amendment to the Constitution of the United States. *Ozan Lumber Co. v. Union Bank*, 207 U. S. 251; *Heath & Milligan Co. v. Worst*, Id. 338.

"This court sustained a classification like that of the Massachusetts statute in *Griffith v. Connecticut*, 218 U. S. 563, where a statute of Connecticut, which fixed maximum rates of interest upon money loaned within the State to persons subject to its jurisdiction was upheld as a valid exercise of the police power of the State; and a provision of the statute which exempted from its operation 'any national bank or trust company duly incorporated under the laws of the State, and pawnbrokers,' was decided to be a legal classification."

In *Cavanaugh v. People* (1916), 61 Colo. 292, 157 Pac. 200, the Colorado supreme court said, with respect to a contention similar to the one made here:

"It is said, further, that the law is unjust and unreasonable because it exempts national banks, state banks, trust companies, building and loan associations and title and guarantee associations, and does not apply to those who loan money at 12 per cent or less, or who loan without security.

"The exceptions, however, appear to be reasonable, inasmuch as they cover only money lenders who are already subject to governmental supervision and control. Such exceptions have been held reasonable by the Supreme Court of the United States. *Griffith v. Connecticut*, 218 U. S. 563, 54 L. Ed. 1151, 31 Sup. Ct. 132.

"Nor is there anything unreasonable in excepting those who loan without security, or at 12 per cent or less. The law was intended to correct abuses in the loaning of money by a class who loan at more than 12 per cent and on security.

"It is common knowledge that there is a large business carried on in loaning small sums at a high rate of interest secured on personal property. It is equally well known that there are grave abuses in the business, that borrowers are treated with great harshness, and often deprived of their property by a process which is little less than robbery.

"The legislature evidently recognized the evils of the system and deemed it necessary to correct them. The classification is not unreasonable nor arbitrary, and unless it is so the courts cannot declare it unconstitutional. *Consumers League v. C. & S. Ry. Co.*, 53 Colo. 54-59, 125 Pac. 577, Ann. Cas. 1914A, 1158.

"The law-making power has a wide discretion in prescribing regulations for the conduct of business, and the constitutionality of the act is presumed. *Barrett v. Indiana*, 229 U. S. 26, 57 L. Ed. 1050, 33 Sup. Ct. 692. Courts should be slow to hold that a law passed in the exercise of the police power is unconstitutional; *Noble State Bank v. Haskell*, 219 U. S. 104, 55 L. Ed. 112, 31 Sup. Ct. 186, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; and in no case should it be done unless its uncon-

stitutionality appears beyond a reasonable doubt. *Ind. Ditch Co. v. Agri. Ditch Co.,* 22 Colo. 513-528, 45 Pac. 444, 55 Am. St. 149."

In line with the two decisions from which we have just quoted at length, the cases in general are practically unanimous to the effect that exemptions or exceptions such as those contained in the Washington small loan act do not render the legislative classifications arbitrary, unreasonable, or unlawfully discriminatory. *In re Home Discount Co.* (N. D. Ala. 1906), 147 Fed. 538; *National Accounting Co. v. Dorman* (E. D. Ky. 1935), 11 F. Supp. 872; *Eaker v. Bryant* (1914), 24 Cal. App. 87, 140 Pac. 310; *In re Fuller* (1940), 15 Cal. (2d) 425, 102 P. (2d) 321; *Reagan v. District of Columbia* (1914), 41 App. D. C. 409; *Beasley v. Cahoon* (1933), 109 Fla. 106, 147 So. 288; *Family Finance Co. v. Allman* (1932), 174 Ga. 467, 163 S. E. 143; *People v. Stokes* (1917), 281 Ill. 159, 118 N. E. 87; *State v. Hill* (1929), 168 La. 761, 123 So. 317, 69 A. L. R. 574; *Dewey v. Richardson* (1910), 206 Mass. 430, 92 N. E. 708; *Shinn v. Oklahoma City* (1936), 59 Okla. Crim. 433, 61 P. (2d) 1126; *Shinn v. Oklahoma City* (1939), 184 Okla. 236, 87 P. (2d) 136; *State v. Ware* (1916), 79 Ore. 367, 154 Pac. 905, rehearing denied, 79 Ore. 377, 155 Pac. 364; *Spicer v. King Bros. & Co.* (1916), 136 Tenn. 408, 189 S. W. 865; *State v. Sherman* (1909), 18 Wyo. 169, 105 Pac. 299, 27 L. R. A. (N. S.) 898, Ann. Cas. 1912C, 819.

We come now to the case of *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345, to which reference was made in the early part of this opinion, and upon which appellant rests his entire argument on the question of arbitrary classification and special immunities. That case involved chapter 213, Laws of 1937, p. 1034, relating to small loans. The act in its original form as passed by the legislature bore a general

resemblance to the small loan act of 1941 now before us, and contained exemptions comparable to those of § 19 of the latter. However, the governor vetoed four sections of the 1937 act, thereby rendering inoperative, in whole or in part, still other sections dependent for their application upon the provisions of the sections stricken by the governor. As a result, the act, in the words of the opinion in that case, amounted to

". . . nothing more than a statute making it a crime for certain persons to charge more than twelve per cent interest on loans under three hundred dollars and which forfeits the loan if the statute be disobeyed."

In the light of that statement of the true effect of the 1937 act, this court in that case held that the act constituted an arbitrary and unlawful discrimination, in that it granted special privileges and immunities to certain classes of persons exempted from its operation and, by the same token, denied equal protection of the laws to those persons within the range of its application.

That case is not in point here, however, for the reason that the statute as there interpreted bore no relation to a true small loan act such as is involved in this case. The best authority for the statement just made is the *per curiam* opinion in the same case, written by the author of the original opinion and appearing in 194 Wash. 706, 77 P. (2d) 595, as follows:

"A petition has been filed in this court praying for an extensive clarification of the opinion in the above entitled case, as hereinbefore published in 192 Wash. 96, 73 P. (2d) 341, upon the ground that the opinion is likely to be so construed as to prevent the future enactment by our legislature of a small loan act of the general character now in force in a number of our sister states.

"We think that this fear is unwarranted. Upon an analysis of the opinion, it will be at once realized that, while, nominally, the court had before it an act pro-

viding for the licensing and regulating of the business of making loans under three hundred dollars, four sections of the act had been vetoed and eight other sections rendered entirely inoperative as a consequence of the veto, so that there remained for the court's consideration only a general law relating to usury, making it a crime to contract for interest of more than twelve per cent per annum on loans under three hundred dollars, and wholly exempting numerous classes of lenders from its operation. *In other words, the decision in no way relates to the constitutionality of a small loan act, but only to the constitutionality of a general criminal statute. It is assumed as a matter of course that the decision will not be invoked as a precedent except in cases of a similar nature.*" (Italics ours.)

We deem it unnecessary to say anything further as to the inapplicability of that case to the problem presented here.

Concluding our discussion of appellant's first contention, we hold that the small loan act of 1941 is not unconstitutional by reason of the classification made therein, nor because of the fact that it exempts certain enumerated classes of persons.

■ Appellant next contends that the act is unconstitutional because, allegedly, it sanctions an illegal delegation of authority to the supervisor of banking. This contention is directed against § 4 of the act, which corresponds in principle to § 4 of the sixth draft recommended by the Russell Sage Foundation. Section 4 of our act, so far as it is pertinent here, reads as follows:

"Upon the filing of such application and the payment of such fees and the approval of such bond the Supervisor shall investigate the facts and if he shall find that the financial responsibility, experience, character, and general fitness of the applicant, and of the members thereof if the applicant be a copartnership or association, and of the officers and directors thereof if the applicant be a corporation, are such as to command the

confidence of the community and to warrant belief that the business will be operated honestly, fairly and efficiently within the purposes of this Act, and that allowing such applicant to engage in business, will promote the convenience and advantage of the community in which the business of the applicant is to be conducted, and that the applicant has available for the operation of such business at the specified location liquid assets of at least ten thousand dollars ($10,000), (the foregoing facts being conditions precedent to the issuance of a license under this Act), he shall thereupon issue and deliver a license to the applicant to make loans in accordance with the provisions of this Act at the location specified in the said application, which license shall remain in full force and effect until it is surrendered by the licensee or revoked or suspended as hereinafter provided; if the Supervisor shall not so find he shall not issue such license and he shall notify the applicant of the denial and return to the applicant the bond and sum paid by the applicant as a license fee, . . ."

As a basis for his contention, appellant again invokes the constitutional provisions, Federal and state, above mentioned. His argument is that the effect of that section of the statute is to permit the supervisor to grant any application or to withhold any license at will, and to vest in him the decision of a pure matter of opinion which cannot be controlled or checked by tangible evidence.

The act does not confer uncontrolled authority upon the supervisor, for by § 23 an applicant or a licensee, upon denial of his application or upon revocation or suspension of his license, as the case may be, is entitled to appeal to the superior court and have a hearing de novo, during the pendency of which appeal any order of revocation or suspension of a license shall be stayed, and from an adverse judgment by the superior court the applicant or licensee may appeal to this court.

Appellant's principal objection to this section of the

statute is levelled against the "convenience and advantage" clause therein, his contention being that the supervisor is thereby clothed with arbitrary power uncontrolled by any prescribed rule of action governing such power.

It will be observed that the standard adopted by the legislature contemplated two factors: (1) the financial responsibility, experience, character, and general fitness of the applicant for a license, and (2) the convenience and advantage resulting to the community from the granting or denial of a license. Thus, the legislature sought not only to guarantee that the small loan business would be conducted by men of the ability, character, and financial standing necessary for the protection of those who may be compelled by reason of some serious emergency to borrow small sums of money, but also to make sure that the needs of the community in that respect were not outrun by the number of such establishments, at the risk of defeating the beneficent purposes of the act. The legislative desideratum was not the mere restriction in number of licensees, but rather the accomplishment of the well known objectives for which the act was passed.

It is not always necessary that statutes and ordinances prescribe a specific rule of action. This is particularly true in those situations where it is difficult or impracticable to declare a definite, comprehensive rule, or where the discretion to be exercised by an administrative officer relates to a regulation imposed for the protection of public morals, health, safety, and general welfare. 11 Am. Jur. 948, Constitutional Law, § 234.

In *Weer v. Page* (1928), 155 Md. 86, 141 Atl. 518, an attack was made upon the validity of a statute which contained provisions regarding personal character and fitness, as well as public convenience and advantage.

In upholding those provisions, the supreme court of Maryland said:

"The statute does not commit to the bank commissioner an unlimited discretion. It directs him to ascertain, 'whether the character, responsibility and general fitness' of the incorporators 'are such as to command confidence and warrant belief that the business of the proposed corporation will be honestly and efficiently conducted,' and 'whether the public convenience and advantage will be promoted by allowing the proposed corporation to engage or continue in business.' These are sufficiently definite standards for the administrative action which the statute authorized. *Public Service Comm. v. Byron,* 153 Md. 464; *Electric Utilities Co. v. Public Service Comm.,* 154 Md. 445. The reasons given by the commissioner for his disapproval of the Sykesville bank charter did not include any objection to the incorporators with respect to their qualifications. The explanation was simply that the bank was not needed and that it would not have a reasonable chance to succeed. This is said to be a different basis of decision from that which the statute defines. Its concern was with the public convenience and advantage, and, according to its evident design, the commissioner was authorized to refuse a projected incorporation by which that object would not be promoted. In stating his conclusion that another bank was not needed at Sykesville, and that its prospect for success was unfavorable, the commissioner was dealing with considerations which vitally affected the question presented for his determination. It could not be said that the public convenience of a community would be promoted by the organization of an additional bank which it did not need, and its interests might be seriously prejudiced by the unsuccessful operation of such an institution."

In *Equitable Loan Society, Inc. v. Bell* (1940), 339 Pa. 449, 14 A. (2d) 316, appeal dismissed (1940), 311 U. S. 621, 61 S. Ct. 393, contention was made that a "convenience and advantage" clause numbered (b) in a statute regulating the business of pawnbrokers was objectionable in that it set forth no guide for the

exercise of official discretion. The Pennsylvania supreme court said:

"As to clause [b], in *Bank of Italy v. Johnson*, 200 Cal. 1, the court had before it a case involving the delegation by the legislature to the Superintendent of Banking of the power to permit branch banks when ' . . . he has ascertained to his satisfaction that the public convenience and advantage will be promoted by the opening of the branch office.' After reviewing the authorities, the court said (p. 15): 'We therefore conclude that the discretion so lodged in the superintendent of banks in this state is a lawful delegation of authority to him.' 'Confidence', 'convenience', and 'advantage', are to our mind quite tangible attributes, but there can be no legislative definition of them that can automatically attach to or identify the individuals possessing them nor the exact situations to which they may become applicable, and necessarily some executive agency must be invoked. To heed plaintiffs' contention and to hold the delegation improper would take from government one of its most essential instrumentalities, of which the various national and state commissions are instances: see *Hall v. Geiger-Jones Company*, 242 U. S. 539, 553; *Noble v. English*, 183 Iowa 893; *State ex rel. The Port Royal Mining Company v. Hagood*, 30 S. C. 519, 525."

Statutory provisions using the formulae "public convenience and advantage," "public necessity," and similar expressions have been sustained in a legion of cases. *United States v. American Bond & Mortgage Co.* (N. D. Ill. 1929), 31 F. (2d) 448, affirmed, *American Bond & Mortgage Co. v. United States* (C. C. A. 7th, 1931), 52 F. (2d) 318, certification of questions dismissed (1931), 282 U. S. 374, 75 L. Ed. 395, 51 S. Ct. 118, certiorari denied (1932), 285 U. S. 538, 76 L. Ed. 931, 52 S. Ct. 311; *Bank of Italy v. Johnson* (1926), 200 Cal. 1, 251 Pac. 784; *State v. Darazzo* (1922), 97 Conn. 728, 118 Atl. 81; *Schaake v. Dolley* (1911), 85 Kan. 598, 118 Pac. 80, 37 L. R. A. (N. S.)

877, Ann. Cas. 1913A, 254; *State ex rel. Dybdal v. State Securities Commission* (1920), 145 Minn. 221, 176 N. W. 759; *Matter of Rudack v. Valentine* (1937), 163 Misc. 326, 295 N. Y. Supp. 976, affirmed (1937), 274 N. Y. 615, 10 N. E. (2d) 577; *In re James* (1925), 99 Vt. 265, 132 Atl. 40. To these might be added many cases from this court where "public convenience and necessity" clauses in public and private carrier statutes were upheld.

Likewise, requirements relative to the financial responsibility, character, and general fitness of applicants for licenses have been repeatedly upheld by the courts. *Gundling v. Chicago* (1900), 177 U. S. 183, 44 L. Ed. 725, 20 S. Ct. 633; *Hall v. Geiger-Jones Co.* (1917), 242 U. S. 539, 61 L. Ed. 480, 37 S. Ct. 217; *In re Halck* (1932), 215 Cal. 500, 11 P. (2d) 389; *Ravitz v. Steurele* (1934), 257 Ky. 108, 77 S. W. (2d) 360; *Weer v. Page* (1928), 155 Md. 86, 141 Atl. 518; *Argo Oil Corp. v. Atwood* (1935), 274 Mich. 47, 264 N. W. 285; *Matter of Mandel v. Board of Regents* (1928), 250 N. Y. 173, 164 N. E. 895; *State ex rel. Central Steam Heat & Power Co. v. Gettle* (1928), 196 Wis. 1, 220 N. W. 201.

We conclude this portion of our discussion by saying that, in our opinion, the provisions above referred to are sufficiently definite and certain to enable the supervisor to administer the act as intended by the legislature, and that they do not constitute an arbitrary or illegal delegation of authority.

Appellant's third, and last, contention is that the act is unconstitutional in that it authorizes unlawful searches and seizures. This contention is directed against § 10 of the local act, which embodies, in virtually the same words, the provisions of § 10 of the sixth draft of the proposed Uniform Small Loan Law. Section 10 of our act provides as follows:

"For the purpose of discovering violations of this Act or securing information lawfully required by him

hereunder, the Supervisor may at any time, either personally or by a person or persons duly designated by him, investigate the loans and business and examine the books, accounts, records, and files used therein, of every licensee and of every person who shall be engaged in the business described in section 2 of this Act, whether such person shall act or claim to act as principal or agent, or under or without the authority of this Act. For that purpose the Supervisor and his duly designated representatives shall have free access to the offices and places of business, books, accounts, papers, records, files, safes, and vaults of all such persons. The Supervisor and all persons duly designated by him shall have authority to require the attendance of and to examine under oath all persons whomsoever whose testimony he may require relative to such loans or such business or to the subject matter of any examination, investigation or hearing. . . . "

In support of his contention, appellant invokes the fourth amendment to the Federal constitution and Art. I, § 7, of the Washington constitution. The Federal amendment, which has reference to unreasonable searches and seizures, may be at once eliminated from consideration, for it is well settled that its provisions are a limitation upon the power of the Federal government only, and have no application to the powers of the states. *State v. Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 156 Pac. 837; 56 C. J. 1157, Searches & Seizures, § 7 *et seq.*; 24 R. C. L. 703, Searches & Seizures, § 4.

Art. I, § 7, of the Washington constitution reads:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Constitutional provisions such as those contained in the article and section just quoted are primarily designed to protect individuals in the sanctity of their homes and the privacy of their books and papers, and

they are not infringed by the enforcement of reasonable rules which have been adopted in the exercise of the police power for the protection of the public health, morals, and welfare. 24 R. C. L. 704, Searches & Seizures, § 6; see, also, 56 C. J. 1160, Searches & Seizures, § 12.

We deem the provisions of § 10 of the small loan act not only reasonable, but absolutely essential to the proper enforcement of the act. It does not permit seizure of any sort, nor the invasion of the person's home, nor even an indiscriminate search into his private affairs, but simply authorizes access to the office and place of business of the individual and permits an examination of the books, accounts, and records pertaining to the small loan business conducted by him.

In *Financial Aid Corporation v. Wallace* (1939), 216 Ind. 114, 23 N. E. (2d) 472, 125 A. L. R. 736, the supreme court of Indiana, in disposing of a similar contention made with respect to the small loan law of that state, said:

"The act in question requires individuals and concerns entering into the small loan business to keep certain records of all business transactions and provides for inspection and examination by the department. In other words, the small loan business comes under the regulation of the banking department and is subject to visitation and examination the same as banking institutions. The appellant claims that this provision amounts to an illegal search and seizure of the appellant's property. Regulatory provisions of this nature have been recognized so long that it would be folly to undertake to strike them down at this time. There is nothing in the act to violate Sec. 11, Article 1, of the Indiana Constitution. *Shuman v. The City of Fort Wayne* (1891), 127 Ind. 109, 26 N. E. 560; *Albert v. Milk Control Board of Indiana, supra* [210 Ind. 283, 200 N. E. 688]."

To the same effect, see *Badger v. State* (1922), 154 Ga. 443, 114 S. E. 635, involving the Georgia small loan

law, and *Sanning v. Cincinnati* (1909), 81 Ohio St. 142, 90 N. E. 125, 25 L. R. A. (N. S.) 686, dealing with a city ordinance regulating chattel mortgage and salary loan brokers.

The judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.

[1]Reported in 119 P. (2d) 323.